WAUNAKEE CANNING CORPORATION and another. Appellants, vs. INDUSTRIAL COMMISSION and others, Respondents.

*December 10, 1954—January 11, 1955.*

For the appellants there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Richard S. Gibbs* of counsel, all of Milwaukee, and oral argument by *Mr. Gibbs.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For other respondents there was a brief by *Ward H. Harris* of Chicago, Illinois, and *Geffs, Geffs, Block & Geffs* of Janesville, and oral argument by *Robert H. Geffs.*

STEINLE, J.    Two questions are presented for determination upon this appeal.  They are:

First: Is an illegitimate minor child living with her father a dependent under the Workmen's Compensation Act, notwithstanding the absence of a legal marriage between her parents?

Second: Where the consular officer of the country in which alien dependents reside, files with the Industrial Commission an application for death benefits on behalf of a purported widow within two years after the date of a deceased's fatal injury, the application alleging that no child survived the deceased, has the commission jurisdiction to award death benefits to the employee's minor child notwithstanding the absence of any separate application in the minor child's behalf?

The following provisions of sec. 102.51, Stats. 1945, are pertinent to a consideration of the first question.

"DEPENDENTS. (1) *Who are.* The following shall be conclusively presumed to be solely and wholly dependent for support upon a deceased employee: . . . a child under the age of eighteen years . . . upon the parent with whom he is living at the time of the death of such parent, there being no surviving dependent parent. . . . In case of divorce the charging of any portion of the support and maintenance of a child upon one of the divorced parents, or any voluntary contribution toward the support of a child by such divorced

parent, or an obligation to support a child by such divorced parent shall be held to constitute a living with the parent so charged.

"(2) *Who are not.* (a) No person shall be considered a dependent unless a member of the family or a spouse, or a divorced spouse who has not remarried, or lineal descendant or ancestor, or brother or sister of the deceased employee.

"(4) *Dependency as of date of injury.* Questions as to who constitute dependents and the extent of their dependency shall be determined as of the date of the injury to the employee, and their right to any death benefit shall become fixed as of such time, irrespective of any subsequent change in conditions; . . ."

Appellants contend that in order to have qualified as a dependent under sec. 102.51 (2), Stats., the child in the case at bar was obliged to establish that she was a member of the family or a lineal descendant of the deceased. Appellants submit that the only family relationship recognized under the enactment is one approved by law, and that the relationship of father and daughter here was not a family relationship within the meaning of the statute. Appellants argue that an illegitimate child may not be classified as a lineal descendant.

Respondents maintain that under sec. 102.51 (1), Stats., dependency is conclusively presumed in the case of a child under the age of eighteen years living with its parent at the time of the parent's death when no other dependent parent survived. They urge that under the conclusive presumption of dependency to which the child was entitled, an absolute right exists in the child to recover benefits under the act. Further, they submit that under the language of sec. 102.51 (2) and this court's rulings in cases such as *Krueger v. Industrial Comm.* (1941), 237 Wis. 158, 295 N. W. 33, and *Universal Foundry Co. v. Industrial Comm.* (1937), 224 Wis. 311, 272 N. W. 23, a person other than such classified in sec. 102.51 (1) can be a dependent under the act, but that he is required to establish his dependency by evidence,

and that only a person referred to in sec. 102.51 (2), and not persons referred to in sec. 102.51 (1), must qualify as "a member of the family or a spouse, or a divorced spouse who has not remarried, or lineal descendant or ancestor, or brother or sister of the deceased employee." As an alternative, respondents maintain that in the event that this court shall determine that persons referred to in sec. 102.51 (1) are obliged to qualify as being within one of the classifications described in sec. 102.51 (2), it is plainly established of record that the child in the case at bar does so qualify, in that she was a member of the deceased's family and was his lineal descendant.

It is to be noted that in *Kuetbach v. Industrial Comm.* (1917), 166 Wis. 378, 165 N. W. 302, this court was called upon to construe the then existing statute with reference to "dependents." Sub. 3 of sec. 2394–10, Stats., was substantially the same as sec. 102.51 (1), except, that in addition to providing for the classes conclusively presumed to be dependents, it also specified that "in all other cases questions of . . . dependency shall be determined in accordance with the fact, as the fact may be at the time of the accident to the employee; . . ." Sub. 4 of sec. 2394–10 was substantially the same as sec. 102.51 (2), Stats. 1945. Commenting upon these provisions Mr. Justice ROSENBERRY speaking for the court said (p. 385) :

"Sub. 3 prescribes the method of determining the degree of dependency; sub. 4 limits the dependents to the classes of persons therein described."

The very language of sec. 102.51 (1) and (2), Stats., implies that there may be dependents eligible to death benefits other than such enumerated in sec. 102.51 (1), and it is correct to infer that they are obliged to establish their dependency by evidence with reference to the facts. However, we are of the opinion that both groups, those who are con-

clusively presumed to be dependents and those who are obliged to establish their dependency by evidence, must qualify as belonging to a class described in sec. 102.51 (2).

In the present situation the blood relationship existing between the decedent as father, and the minor child Ramona, as daughter, was clearly established of record and is not challenged by appellants. The uncontradicted evidence indicates that the child's parents Jose Fabela Aguirre and Gregoria Montoya de Aguirre lived together from 1934 until the father's death in 1946, and that the child lived with them, and that both the child and the mother were supported by the child's father. Under the established facts of this case there is no question of the child's actual dependency upon the father.

Appellants contend that this cause is controlled by the rule in *T. J. Moss Tie Co. v. Industrial Comm.* (1947), 251 Wis. 57, 27 N. W. (2d) 725, 28 N. W. (2d) 884. There the child was that of a woman with whom the deceased had lived but the deceased was not the father of the child. The court said (p. 59):

"The tie that brought her [the child] into the household and kept her there was the illegitimate tie between her mother and Scofield."

In the case at bar the attorney general argues that:

"In the present case the tie that brought Ramona into her father's house and kept her there was the father-daughter relationship."

We concur in that expressed view. The child was a member of the decedent's family. We find ourselves in accord with the observation in *Piccinim v. Connecticut Light & Power Co.* (1919), 93 Conn. 423, 427, 106 Atl. 330, that:

"It is, of course, true that one may not successfully assert a claim to membership in a family group, and thereby secure

benefits provided by the law, whose presence in that group is in violation of law. *Scott's Case,* 117 Me. 436, 441, 104 Atl. 794, 796; *Armstrong v. Industrial Comm.,* 161 Wis. 530, 531, 154 N. W. 844. That is the position in which the mother of these children found herself, and the commissioner has for that reason properly refused to recognize her as belonging to the deceased's family, and denied her claim to share in an award of compensation. *Gron v. Mass. Employees Ins. Co.* 2 Mass. Ind. Acc. Board, 736, 741; *Bustamente v. Gate City Ice, etc., Co.,* 2 Cal. Ind. Acc. Comm. 120, 121; *Bloom v. Tilin,* 5 N. Y. State Dept. Rep. 441. The children's position in that household was a very different one. They were not only innocent of their parents' wrongdoing, but their father, in caring for them, was acting in obedience to the mandate of the law. It was alike his moral and legal duty to maintain them, and it was quite within his legal right to do so in the most natural and convenient way by taking them into his household. That he kept his unlawful consort there also is a matter for which they were not responsible. They certainly should not be punished for his unlawful act in so doing or hers in remaining."

In their contention that the child Ramona was not a dependent, appellants rely on *Kuetbach v. Industrial Comm., supra.* There the child was conceived out of lawful wedlock and had not been born at the time of the decedent's injury. Death benefits for the child were denied under a ruling that a statute similar to sec. 102.51 (4), Stats. 1945, was applicable, *i. e.,* that no dependency existed at the time of injury.

In *Bellrichard v. Industrial Comm.* (1946), 248 Wis. 231, 21 N. W. (2d) 395, it appears that the Industrial Commission awarded death benefits to a minor child whose mother was not validly married to the father at the time of the injury. True, in that case there was no challenge as here, but neither was there comment by the court indicating illegality of such action on the part of the commission.

It appears that under provisions of the law of Mexico the child, Ramona, was a lineal descendant of the deceased.

In Wisconsin sec. 237.06, Stats., provides for heirship of illegitimate children.

It is considered that the language used in the compensation act should be as liberally construed to effectuate the beneficent purposes intended, as can reasonably be done. Construction, where construction is permissible, which will give to the law its fullest reasonable scope, is thought to be what is required to carry out the legislative purpose. *State ex rel. Milwaukee v. Circuit Court* (1916), 163 Wis. 445, 158 N. W. 92. Actually, the compensation act is a substitute for the common law and is not merely supplemental thereto. The theories upon which the common law developed are not always helpful in determining the intent of the legislature in passing on the act. As stated by Horovitz, Workmen's Compensation (1944), p. 7:

"Unquestionably, compensation laws were enacted as a humanitarian measure, to create a new type of liability,—liability without fault,—to make the industry that was responsible for the injury bear a major part of the burdens resulting therefrom. It was a revolt from the old common law and the creation of a complete substitute therefor, and not a mere improvement therein. It meant to make liability dependent on a relationship to the job, in a liberal, humane fashion, with litigation reduced to a minimum. It meant to cut out narrow common-law methods of denying awards."

On the basis that sec. 102.51, Stats. 1945, did not distinguish as between legitimate and illegitimate children and for the reason that it is clear that the child of the deceased was a member of the decedent's family and was living with him at the time of his death and was being properly supported by him, we are constrained to hold that the child was a dependent within the purview of the compensation act.

With reference to the second question, it is the position of appellants that since no claim had ever been filed on behalf of the minor child, and no reference to the existence of such child had been made in any of the official proceedings before

the commission within two years of the decedent's death, therefore, any claim on her behalf is barred by the statute of limitations.

Sec. 102.12, Stats. 1945, provided in part:

". . . Regardless of whether notice was received, if no payment of compensation (other than medical treatment or burial expense) is made, and no application filed with the commission within two years from the date of the injury or death, or from the date the employee or his dependent knew or ought to have known the nature of the disability and its relation to the employment, the right to compensation therefor shall be barred."

Under sec. 102.17 (1) (a), Stats. 1945, the requisite application from a party in interest need only to state "the general nature of any claim as to which any dispute or controversy may have arisen."

Sec. 102.19, Stats. 1945, provided in part:

"In case a deceased employee, for whose injury or death compensation is payable, leaves surviving him alien dependents residing outside of the United States, the duly accredited consular officer of the country of which such dependents are citizens or his designated representative residing within the state shall, except as otherwise determined by the commission, be the sole representative of such deceased employee and of such dependents in all matters pertaining to their claims for compensation. . . ."

The consul general of Mexico, Elias Colunga, acting pursuant to authority in sec. 102.19, Stats., filed an adjustment of claim for the death of decedent with the commission. The filing of the application constituted the commencement of the proceedings. *Metropolitan Casualty Ins. Co. v. Industrial Comm.* (1951), 260 Wis. 298, 50 N. W. (2d) 399. The proceedings were commenced within two years from the date of decedent's death. The commission thereby obtained jurisdiction over the entire controversy. True, the child was not named in the application, although it was in fact, a depend-

ent. The commission denied benefits to the purported wife and directed an award for the child. The situation is comparable to that in *Bellrichard v. Industrial Comm., supra,* wherein a widow filed an application for herself. The commission determined that her marriage with the deceased was invalid and denied death benefits to her. However, it awarded benefits for the children. The court quoted sec. 102.17 (1) (a), *supra,* and said (p. 236):

"The proceeding instituted by any party in interest is the only proceeding authorized by the Workmen's Compensation Act (ch. 102, Stats.) regarding compensation and benefits (sec. 102.16, Stats.). The act contemplates that by this procedure all parties in interest are to be brought before the commission and their rights under the act determined. In such a proceeding the facts as found by the commission are made conclusive. This means that every party in interest is concluded by the finding made so long as the commission acts within its powers. (sec. 102.23 (1) (a), Stats.)."

Appellants point out that in *Bellrichard v. Industrial Comm., supra,* the award for the children was made within two years from the date of decedent's death. Such observation is correct. However, it is to be noted that no application was ever made on behalf of the children. The commission obtained jurisdiction to make an award for the children on the basis of the application which had been directed to it by the purported wife on her own behalf.

It is considered that when a consular officer files an application under provisions of sec. 102.19, Stats., he thereby represents the interest of all dependents of the deceased workman, whether they are named in the application or not, and regardless of whether their respective interests are conflicting. In *Nystrom v. Industrial Comm.* (1928), 196 Wis. 406, 409, 220 N. W. 188, it was said that "the law designedly contemplates that the industrial commission shall protect the rights of the injured workman and his dependents." It is

to be observed that sec. 102.17 (2) permits the commission to initiate proceedings under the act on its own motion.

It is considered that the filing of the application by the consular officer was an application on behalf of all the dependents of the deceased in Mexico. Since it was filed within the two-year period, the claim of no Mexican dependent was barred by any statute of limitation.

We are obliged to hold that the commission's findings and interlocutory order in this cause were properly confirmed by the trial court.

*By the Court.*—Judgment affirmed.